UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:14-cr-00207-GEB |
|---|---|
| Plaintiff, | |
| v. | **ORDER REQUIRING DEFENDANT TO PAY VICTIM "VICKY" RESTITUTION** |
| MICHAEL BAILEY, | |
| Defendant. | |

The United States moves for an order awarding victim "Vicky"[1] $52,500 in restitution, comprising $2,500 for Vicky's attorney's fees and other legal costs her attorney incurred on Vicky's behalf in this case, and $50,000 for the medical costs for Vicky's physical harm caused by Defendant Michael Bailey's child pornography crimes. Gov't Mot. for Restitution ("Gov't Mot."), ECF No. 83. Bailey filed an opposition brief contesting an amount of restitution that has not been requested; and he failed to respond to the restitution awards that are sought. Def. Opp'n, ECF No. 84. The United States filed a reply. Reply, ECF No. 85.

**Legal Costs**

The United States seeks a $2,500 restitution award for

---

[1] "Vicky" is the pseudonym for the child pornography victim whose images and videos were recovered from Bailey's computer. The pseudonym has been used throughout this litigation and in other criminal proceedings, and is intended to protect the identity of the victim.

1

the legal costs Vicky's attorney incurred representing Vicky in this case. The United States relies on a declaration from Vicky's attorney ("Vicky's Attorney's Declaration"), ECF No. 83-1, in support of this request, in which Vicky's attorney explains what her representation entailed and enumerates incurred costs and expenses. The United States argues the requested "attorney's fees and other legal costs . . . are explicitly [authorized] by . . . 18 U.S.C. § 2259(B)(3)(E)." Gov't Mot. 8:20-21. This statute is contained in the Violence Against Women Act of 1994 which presribes in 18 U.S.C. § 2259 that courts shall order restitution for any offense under this Act, including child pornography trafficking crimes. Subsections 2259(b)(3) and (4)(A) authorize restitution for "attorneys' fees [and] other costs incurred by the [child pornography] victim."

        The United States argues the requested legal cost and attorney fee restitution award it seeks for Vicky has been disaggregated from costs accountable for the harms initially caused by Vicky's first abuser and represents the physical harm caused by Bailey. Gov't Mot. 9:2-3, 11:28. The United States argues this disaggregation complies with the following Ninth Circuit directive in United States v. Galan, 804 F.3d 1287, 1291 (9th Cir. 2015): "in calculating the amount of restitution to be imposed upon a defendant who was convicted of distribution or possession of child pornography, the losses, including ongoing losses, caused by the original abuse of the victim should be disaggregated from the losses caused by the ongoing distribution and possession of images of that original abuse, to the extent possible." The United States cites, inter alia, the following

portion of Vicky's attorney's declaration as support for its request:

> [C]osts for expert fees, records fees paid to health providers and schools, fees paid for the Public Access to Court Electronic Records (PACER) files relative to prosecutions involving the Vicky images, documentation fees, a conference registration fee, appellate costs, travel expenses for me to meet directly with my client and to attend hearings on her behalf, and media research. Also included [but] netted out are travel expense reimbursement amounts received from the US Marshal's Office.

Vicky's Attorney's Declaration at 7:9–17. Vicky's attorney's declaration contains sufficient information to justify the legal costs sought, and the requested amount is reasonable. Therefore, Vicky's request for $2,500 in restitution for her incurred attorney's fees and other legal costs is granted.

**Medical Costs**

The United States also requests on Vicky's behalf a $50,000 restitution award based on Vicky's medical costs incurred for the physical harm caused by Bailey's child pornography trafficking crimes in this case. This restitution amount is identical to the amount of restitution Vicky's attorney seeks on Vicky's behalf in a letter filed under seal as Exhibit 1. Gov't Mot. Ex. 1 ("Vicky's Attorney's Letter"), ECF No. 87-1 (sealed).[2]

---

[2] Even though Vicky's attorney's letter, ECF No. 87-1, was filed under seal as Exhibit 1, and Dr. Cooper's letter, ECF No. 87-3, was filed under seal as Exhibit 3, any quoted and/or referenced portion of these sealed filings herein unseals what is quoted and/or referenced since 18 U.S.C. § 3553(c) prescribes: a federal court "shall state in open court the reasons for its imposition of the particular sentence." See generally, United States v. Armstrong, 185 F. Supp. 3d 332, 335 (E.D.N.Y. 2016)("Access to sentencing proceedings allows the public to understand the reasons behind a given sentence, a value reflected in 18 U.S.C. § 3553(c), which states that sentencing shall be held in open court, in part to 'enable the public to learn why defendant received a

Vicky seeks in that letter an award of restitution for the following outstanding costs: $2,500 in legal costs and $50,000 in general restitution including, inter alia, for Vicky's psychological, educational, and vocational costs asserted to be supported by three different experts. Id. at 2. The United States contends the inclusion of psychological, educational, and vocational costs as a basis for Vicky's restitution award is inconsistent with the Ninth Circuit's Galan holding that "the amount of restitution to be imposed upon [the] defendant . . . should be disaggregated from the losses caused by the ongoing distribution and possession of images of that original abuse, to the extent possible." 804 F.3d at 1291. The United States explains:

> [T]hese psychological, educational and vocational costs are not "disaggregated" as is now required by Galan. After sentencing, the government contacted "Vicky's" attorney to inquire about whether the victim had any materials that could be submitted regarding disaggregation of these losses for the government to meet its burden. For these psychological losses, "Vicky" does not yet have such a disaggregation analysis. She did, however, provide[] disaggregation information regarding medical (non-psychological) ailments.

Gov't Mot. 8:8-13. Vicky has not adequately supported her restitution request for psychological, educational, and vocational costs. However, the United States argues Vicky should nevertheless be awarded $50,000 in restitution for her medical

---

particular sentence.'"; see also United States v. Kravetz, 706 F.3d 47, 56 (1st Cir. 2013) (indicating the public has a right to know which filings "bear directly on criminal sentencing [when a party seeks to have them] to influence the judge's determination of the appropriate sentence").

4

costs involved with her physical harm caused by Bailey. The United States argues the referenced medical costs are "disaggregated" from costs caused by the original abuse, as required by Galan, and reflect Bailey's "relative role in the causal process" and proportioned out of the total losses Vicky suffered from all child pornography trafficking of her images and videos, as required by United States v. Paroline, 134 S. Ct. 1710, 1722 (2014). See Gov't Mot. 7:7-11, 9:14-16.

18 U.S.C. § 2259 prescribes in pertinent part that the federal court shall direct the defendant of a child pornography trafficking offense "to pay the [child pornography] victim [of the offense] the full amount of the victim's losses as determined by the court," including "any costs incurred by the victim for . . . medical services relating to physical . . . care; . . . attorneys' fees, as well as other costs incurred [which have been] suffered by the victim as a proximate result of the [defendant's] offense." 18 U.S.C. § 2259(b)(1)-(3). Concerning child pornography restitution awards, the United States Supreme Court explains in Paroline, 134 S. Ct. at 1727:

> [W]here it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses[3] . . . . The required restitution

---

[3] Paroline, 134 S. Ct. at 1722, defines "general losses" as follows: "[T]he aggregate losses . . . that stem from the ongoing traffic in [the victim's] images as a whole."

5

would be a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role. This would serve the twin goals of helping the victim achieve eventual restitution for all her child-pornography losses and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims.

"[T]he government must prove by a preponderance of the evidence that [the defendant's child-pornography] offenses proximately caused the losses incurred by [the child pornography victim]." United States v. Kennedy, 643 F.3d 1251, 1263 (9th Cir. 2011) (citation omitted). The Ninth Circuit explains in Kennedy that "[i]n carrying this burden, . . . the government must provide the court with enough evidence to allow the court to estimate the full amount of the victim's losses with some reasonable certainty. While this is not a requirement approaching mathematical precision, a restitutionary award under § 2259 will be improper if the district court must engage in ... arbitrary calculations to determine the amount of the victim's losses." 643 F.3d at 1261 (citation and quotations omitted).

The United States argues as follows concerning the $50,000 in restitution it seeks from bailey for Vicky's physical harm medical costs:

> [T]he attorney for "Vicky" forwarded information about disaggregated ongoing physical injuries. Those injuries are documented in a report by Dr. Cooper . . . . As set out in Dr. Cooper's assessment, . . . [t]he medical conditions "can worsen over time" due to the stress related to dealing with the active trafficking of images of [Vicky's] abuse. Exh. 3 ¶ VII.

Gov't Mot. 9:6-8, 9:12-14. The United States cites as support of this argument a letter from Dr. Cooper, filed under seal as Exhibit 3, which contains Dr. Cooper's medical assessment of Vicky's physical harm. Gov't Mot. Ex. 3 ("Dr. Cooper's Letter"), ECF No. 87-3 (sealed). Dr. Cooper states in her letter that she "reviewed the medical records of [Vicky and] conducted an extensive interview of her in 2015," and made the following findings:

> The ongoing psychological maltreatment caused by the action of downloading, trading and possession of the Vicky series clearly increases the severity of [Vicky]'s health conditions which preceded or began after the abusive images were made. The cause of worsening of these conditions is primarily related to the toxic role of chronically elevated serum cortisol levels in [Vicky], the stress hormone which remains pathologically elevated in response to the ongoing psychological impact of the distribution of these abusive images . . . . The chronic elevation of this stress hormone, cortisol is recognized as a critical eventual cause of numerous autoimmune disorders . . . . Review of the medical records of [Vicky] has revealed [several] medical diagnoses . . . .

Dr. Cooper's Letter ¶¶ III, V.

The United States further supports the $50,000 restitution medical cost figure arguing Bailey's child pornography trafficking activities were particularly egregious offenses and caused exceptional harm to Vicky justifying this enhanced restitution award. Specifically, the United States argues Bailey had a "dangerous fixation" with Vicky, evinced by Bailey's search for information about her online using her real, legal name; and the United States contends Bailey's "disturbingly obsess[ion]" with Vicky is also evinced by his

proportionally voluminous collection of child pornography videos and images of Vicky. Gov't Mot. 11:11, 11:16-18, 12:7-8, 12:12. The United States argues since Bailey was "one of the most egregious child pornography traffickers who traded in Vicky's videos" besides her original abuser, "Bailey's causal role in Vicky's ongoing general losses is larger than most defendants' causal roles . . . and . . . cause[s] the stresses that are exacerbating [Vicky's] ongoing medical issues." Gov't Mot. 11:18-22, 12:4-5. The United States explains the degree to which Bailey caused Vicky harm by arguing the relevance of Bailey's conduct to factors mentioned by the United States Supreme Court in <u>Paroline</u> as follows:

> 1. [Regarding t]he number of past criminal defendants found to have contributed to the victim's general losses . . . the Department of Justice [records show] the United States is aware of 783 prior restitution awards to "Vicky" for federal child pornography trafficking offenses. Of those restitution awards, the average (arithmetic mean) of restitution awards is $14,489.84. This tally of defendants includes Christopher Geanakos, whom this Court ordered on July 28, 2017, to pay $1[0],000 in restitution to "Vicky."[4]
>
> 2. [In showing r]easonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses . . . the United States appreciates the sentiment behind the Supreme Court's inclusion of this factor, [but] in practice it is unlikely to ever result in more than mere speculation. As noted in Vicky's attorney's letter, other district courts have declined to place any weight in this factor as being incredibly speculative. Exh. 1 at Page 3. It is fair to

---

[4] Defendant Christopher Geanakos was ordered to pay a total of $15,000 in restitution, as follows: $5,000 to victim "S." and $10,000 to victim "V." <u>United States v. Geanakos</u>, No. 2:13-cr-00404, ECF No. 123.

say that "Vicky" is a series of child pornography that will remain highly trafficked. One metric that the government can provide is that between the Cantrelle case and this date, the number of convictions and restitution awards for "Vicky" has increased from 309 to 783. See Cantrelle, No. 2:11-CR-00542-GEB, 2013 WL 1624824, at *9 (E.D. Cal. Apr. 15, 2013) (relying on the government's brief after remand from the Ninth Circuit.)

3. [In an] available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted)[, t]he United States can represent, consistent with the representation made above, that the Vicky series is among the more highly trafficked series of child pornography. Accordingly, there are many offenders who will never be caught and convicted. This also means, however, that the ongoing damage from the trafficking of the images provides a disproportionately larger impact on this victim.

4. [In terms of w]hether the defendant reproduced or distributed images of the victim[, Bailey] did distribute (but did not produce) the images . . . .

5. [In terms of w]hether the defendant had any connection to the initial production of the images[, Bailey] did not have any known connection to the initial production of the "Vicky" images.

6. [Regarding h]ow many images of the victim the defendant possessed . . . the National Center for Missing and Exploited Children, [estimates] at least 48 of the videos of child pornography recovered from Bailey's computer were videos of "Vicky." This represents a significant portion of Bailey's collection.

7. [Regarding o]ther facts relevant to the defendant's relative causal role . . . as set out in the complaint and in the search warrant affidavit, Bailey took the incredibly disturbing path of searching for "Vicky" by her real name. As "Vicky's" lawyer correctly points out in her letter requesting restitution, this "understandably reinforces

9

[Vicky's] paranoia" and leads to the understandable conclusion that people like Bailey (or others on the internet) "pose a real and ongoing danger to her and her family." Exh. 1 at Page 2.

This factor is amplified by the fact that it appears that a very large portion of Bailey's collection of child pornography focused on Vicky. According to his PSR, a conservative number of child pornography videos in his case is 109. PSR ¶ 29. If 48 of those videos were of Vicky, and if he was actively seeking out information on the Internet based on her true legal name, this defendant's causal role in "Vicky's" ongoing general losses is larger than most defendants' causal roles. Bailey appears to have been bordering on being obsessed with "Vicky" and it is this type of defendant who, according to the reports from Vicky's various doctors, cause the stresses that are exacerbating her ongoing medical issues. It is also worth noting that Bailey, as set out in the PSR, has a history of acting out by "sexting" with known underage victims. PSR ¶ 15.

. . . .

Doctor Cooper's analysis shows that "Vicky" suffers from a number of medical ailments that are occasioned by -- or exacerbated by -- the emotional toll of dealing with the reality that videos of her repeated rape are routinely traded on the Internet. Those damages number in the realm of several million dollars. Leaving aside her original abuser, Bailey stands as one of the most egregious child pornography traffickers who have traded in Vicky's videos. Not only did he share her videos (making him more accountable then people who passively sought out or possessed her images), he appears to have a dangerous fixation on "Vicky" in particular. He searched for information about her online and nearly 40% of his identifiable child pornography collection consisted of videos of "Vicky."

The resulting award must be neither "severe" nor "a token or nominal amount." Paroline, 134 S. Ct. at 1727. Here, a $50,000 award for Bailey's portion of "Vicky's" ongoing medical costs would not be severe. It

10

> would be larger than the average $14,289 award nationwide, but that is appropriate given that Bailey was so disturbingly obsessed with "Vicky" and has a history of sexting minors, making his obsession with "Vicky" that much more worrisome. It would also be more than a mere "token" or "nominal" amount.

Gov't Mot. 10:1-12:14.

The United States Supreme Court explains in <u>Paroline</u> that factors which "serve as rough guideposts for determining an amount [of restitution] that fits the offense"

> could include[:] the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

134 S. Ct. at 1728. The United States Supreme Court further explains:

> These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense. The resulting amount fixed by the court would be deemed the amount of the victim's general losses that were the 'proximate result of the offense' for purposes of § 2259, and thus the 'full amount' of such losses that should be awarded.

<u>Id.</u> "[A]s a starting point, [the district court may] determine the amount of the victim's losses caused by the continuing traffic in the victim's images . . . , then set an award of

restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses." Id.

The United States contends the medical costs portion of restitution it seeks for Vicky is disaggregated from costs caused by the initial abuser and is also disaggregated from costs caused by other child pornography traffickers, and consists solely of Bailey's proportionate share of the costs Vicky has and will incur for her physical harm that have been worsened by Bailey's child pornography trafficking activities. Gov't Mot. 9:15-16, 11:26-28. The record evinces Bailey possessed and distributed videos and images of Vicky; "at least 48 of the videos of child pornography recovered from Bailey's computer were videos of Vicky." Gov't Mot. 11:6-7. Dr. Cooper explains in her letter, filed under seal as Exhibit 3, that Vicky suffers from "chronically elevated serum cortisol levels," which has worsened by "the action of [offenders] downloading, trading and possession of the Vicky series." Dr. Cooper's Letter ¶ V. Vicky's attorney states in her letter, filed under seal as Exhibit 1, that "Vicky has . . . been made aware of [the] general fact that . . . this particular defendant" had "view[ed] images of her abuse." Vicky's Attorney's Letter at 4. The record supports finding "both that [Bailey] possessed [Vicky]'s images and that [Vicky] has outstanding [medical costs for a physical condition] caused by the continuing traffic in those images," which warrant an award of restitution. Paroline, 134 S. Ct. at 1727.

However, the United States has not satisfied its burden of proving by a preponderance of the evidence that the $50,000 it

12

requests for Vicky's physical injury medical costs would be a "reasonable and circumscribed award . . . in recognition of the indisputable role of [Bailey] in the causal process underlying [Vicky's total] losses and [would be] suited to the relative size of [Bailey's] causal role." Paroline, 134 S. Ct. at 1727. The record evinces Bailey was among the child pornography traffickers responsible for Vicky's physical harm at issue, but the record does not support finding that Vicky was aware of his apparent effort to search for her whereabouts using her real name. Therefore, an enhanced restitution award for this unsubstantiated injury is unsupported by the record. Further, it is unclear whether Bailey's offenses caused any more physical harm to Vicky than what other child pornography traffickers of her images have been found to have caused her. Cf. Robidoux v. Rosengren, 638 F.3d 1177, 1181–82 (9th Cir. 2011) (indicating a federal judge may evaluate similar judgments and compromised settlements, when deciding "the question [of] whether the net amount distributed to [a] minor plaintiff in [a compromised] settlement is fair and reasonable, [and] recovery in similar cases"). The average restitution award for general damages imposed on other child pornography traffickers of the Vicky's series is approximately $15,000. In light of the evidence presented, this restitution amount is reasonable and sufficiently circumscribed to Bailey's portion of harm to Vicky.

Therefore, Defendant Bailey shall pay restitution in the amount of $17,500, which includes $2,500 in attorney's fees and other legal costs and $15,000 in disaggregated medical costs for Vicky's physical harm caused by Bailey.

13

Further, Vicky's attorney's following request in the letter filed under seal as Exhibit 1 is granted: restitution shall be made to "Carol L. Hepburn in trust for Vicky" and mailed to 2722 Eastlake Avenue E. Suite 200 Seattle, Washington 98102.

The judgment shall be amended in accordance with this order.

Dated: September 18, 2017

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

14